May it please the Court, Wayne Sachs, I respectfully request three minutes of rebuttal. Well, that's the Wayne Sachs I know. Three minutes of rebuttal. Good morning, Your Honors. I represent Petitioner Emanuel Mahn. He's present in the courtroom. And although I just represent one person, this is a matter of extreme importance. According to the Pennsylvania Commission on Sentencing, between 2,300 and 2,900 people are convicted of reckless endangerment in Pennsylvania every year. Help me understand what happened here. I'm not sure what, if anything, it means in terms of the record. I'm looking at the affidavit of probable cause, and I'm scratching my head and trying to figure out how he got hit with recklessly endangering. I would assume, and it's probably not in the record, he was given a breathalyzer when the police show up. Someone runs into a garage. I can imagine the police not giving him a breathalyzer, but at least he's not intoxicated as far as this record shows. He loses control of the car. I did a Google search. There are all kinds of incidences on the web of the Nissan Maxima accelerating out of control. He says that's what happened here. He loses control of the car, accelerates, runs into a garage, and he ends up with a recklessly endangering. Judge, you know, I wasn't there, but Mr. Mon, a Liberian immigrant, he's in Delaware County. The case was fast-tracked between the moment of arrest and the time he pled guilty. He got a year probation. And that's just – I can't give you the legal analysis as to why that was charged. It was probably mischarged, but in any event, it swept him up, and it's an indication of how broad it is. The problem is he admitted the offense. That's correct. He did plead guilty to it. He got a year probation. It's a misdemeanor of the second degree. And I just cite those figures that it's a widely used offense. I mean, there's about 5,000 or so simple assault convictions per year. What was the number again of recklessly endangering? Between 2,300 and 2,800, according to the Commission on Sentencing statistics. Okay. And you're arguing aggravating factors and trying to distinguish this from the case, the New York statute in NAPDIC. But why isn't the definition of recklessness sufficient to give you the aggravating factors that you're saying are not here? Your Honor, it's tautological to say that a deviation of a standard of care and a conscious disregard of that risk creates its own aggravating factor. It's central to the Court's decision in NAPDIC was that the aggravating factors went considered with recklessness. And in that case, the New York statute had depraved indifference to human life and the actual creation of a grave risk of death. Well, isn't the aggravating factor that you place in danger another person, in danger of death or serious bodily injury? Respectfully, Judge Fuentes, not place. Place or may place. The Pennsylvania reckless endangerment is a subjunctive statute. I agree. Maybe we can talk about what is possible and what isn't. But it's still placing someone in danger of death or serious bodily injury. Not necessarily. It's not under Pennsylvania reckless endangerment. You said because may place. That's correct. There's absolutely no requirement of an actual difference. So if we took out that phrase, may place, we'd have a difference. You would agree then it would be categorical. Categorical. Well, it is categorical. Well, it shouldn't be categorical, right? Well, you're arguing this is what gets you to a modified categorical because it's a disjunctive. I'll say this. It's not a divisible statute, which we would say under DeKalb and Jean-Louis would be. Therefore, the approach is categorical. It's categorical. However, even under Partika and Jean-Louis, and although Duaneus Alvarez was not very well regarded in this circuit, still it's a Supreme Court case. The question is. All Supreme Court cases are regarded extremely reverently in this circuit. Right. The question is that my colleague cited, and I talk about it in my brief, that to determine least culpable conduct, one method, and to determine over breath, one method is to point to some case where it reached non-terpitude misconduct. And you don't have to look any further than the instant case to see that. So it's not the divisible. It's not divisible in the sense that it would go modified categorical for that reason, but it's simply pointing out a case that because of the breadth of the statute, it would reach non-terpitude misconduct. I would like to agree with you, but the problem is NAPIC stands right in the way because that court interpreted a statute almost identical to this one. Your Honor, I would respectfully disagree. It's clearly not identical, and I think you can see that by placing NAPIC within the New York statutory scheme. What's the difference? Well, for example, NAPIC has in New York reckless endangerment of the first degree, which is the statute construed in NAPIC, requires recklessness, the actual creation of grave risk of death, and depravity that depraved indifference to human life. That's non-terpitude, though. That's depravity. Exactly. That was the statute. That was the statute in NAPIC. And, in fact, the board decision in NAPIC, it's clear, and I've appended it to my brief, it's clear that the depravity aspect of the element of the New York, the depravity element in the New York statute was central to the board decision in NAPIC, which this Court adopted. And the New York statute is not as the Pennsylvania statute, which has pure recklessness with no aggravating factors. If you look at reckless endangerment in New York in the second degree, which is pure recklessness, the causation of the risk of serious bodily harm, it's almost precisely like the Pennsylvania reckless endangerment statute. This statute includes recklessness also as an element. The statute includes recklessness as an element. Reckless endangerment, yes, it's the element. Of course, it's the element and the definition of conscious disregard and the substantial duty in acting unreasonably is the essence of all definitions of recklessness. All recklessness crimes, if the Court that NAPIC reviewed in all the BIA decisions construing recklessness that NAPIC reviewed, and the later BIA case of Solon, which laid out the framework for analysis of reckless assault. I mean, if you look at the facts, we're not really supposed to, but if you look at the facts, he thought he was stepping on the brake, but instead he stepped on the accelerator. You're right. And ran into somebody's garage. That's correct. Is that what happened? That's all indications of what happened. There's no indication of anything that would. You probably could do the same thing if you go through a stop sign. Well, you don't stop. Instead, you're stepping on the brake when you approach a stop sign. Instead of the brake, you hit the accelerator. You go through the stop sign. I suppose you could be convicted under the statute. You could. But you don't have a passenger in the car. Supposedly so. It's brought without implicating any turpitude. That implicates the breadth of the statute. But coming back to your point about that recklessness is in the statute, yeah, recklessness is in the statute in NAPIC and in Solon, a later case for which NAPIC essentially provides the methodological framework for reckless crimes. It describes how when we're – there's a scale, and when the level of harm and the risk of harm increases, the level of mens rea decreases. But there's never been a BIA case or a case from this court which has held that pure recklessness, absent another aggravating factor, not within the definition of recklessness itself, such as depravity, use of a weapon, or that it's aimed at a protected class like the Mubu case. But, sir, the statute includes that. It talks about evincing a depraved indifference to human life. He recklessly engages in conduct, evincing a grave risk of death to another person. That's not the statute, Your Honor. That's not our statute. That's NAPIC's statute. That's the New York statute. That's the New York statute, precisely my point. But why isn't the – coming back to this, the definition of recklessness brings in a gross deviation from the standard of conduct, a reasonableness. Why isn't that tantamount to the kind – and I look at New York statute, and it seems to me that it's almost the malice that you have in homicide statute, except no one dies. That's correct. That's correct. Pennsylvania is – examine the New York – the Pennsylvania aggravated assault statute. That has causing serious bodily injury with depraved – under circumstances evincing a depraved indifference to the value of human life. The cases which we cite in our brief are clear that pure, simple recklessness, as is present in reckless endangerment, will not support the aggravated – an aggravated assault conviction in Pennsylvania. Whereas New York punishes the same type of conduct under its reckless endangerment in the first degree statute, and its second degree statute is exactly the same as reckless endangerment in Pennsylvania. Every – the definition of recklessness is the same. It's a model penal code definition. It's the same in all the BIA – all the BIA decisions from Franklin to Medina to Watchcow to Solon itself. The definition of recklessness is the same. It's a model penal code definition. It's not what's – nothing has changed except the board's more – and this board member in particular. I mean, this is a single board member decision to which this court owes no deference. He misreads NAPIC in its application, and he reads NAPIC as if to say that the only thing that NAPIC stands for is the proposition that recklessness can inhere – that moral turpitude can inhere in recklessness crimes without the base requirement of NAPIC, that that's a baseline from which to examine. And it's – the NAPIC decision says it's clear that when taken together, the aggravating factors – the aggravating factors with recklessness, not just recklessness – recklessness plus depravity plus the creation of grave risk of death and the existence of an actual victim is required. There's an immediacy requirement in NAPIC that is totally devoid in the Pennsylvania statute. You don't need a victim here. There's a substantiality requirement in NAPIC that is not present in the Pennsylvania statute. The Pennsylvania statute punishes the mere potential of harm, not the actual causation of harm. Well, it's a good point. Now, depravity is missing from the Pennsylvania statute. Absolutely missing. And the Pennsylvania statute includes the possibility of creating a danger as opposed to the New York statute, which requires the creation of a danger. Precisely. And that was totally not examined at all, nor was BIA case law as recent as so long, which is the touchstone of the framework for analyzing assault crimes. I'm sure Mr. Insigne will have a different view, but how about the deference that we give the BIA regarding the conclusion that this is a statute that evinces moral turpitude? None. Zero. Zero deference. They're construing – we defer to the – you defer to the BIA as to the definition of what moral turpitude is, but in terms of construing what elements are contained in a criminal statute, that is something that they have no expertise in, and that's – you owe no deference in your construction. Plus it's a single board member, as you said earlier. That's correct, Your Honor. I'll reserve my remaining remarks for rebuttal. All right. Good morning, Your Honors. Good morning. May it please the Court, Andrew Insigne on behalf of the Attorney General. The Board's reasonable decision in this case rests on a long line of cases culminating in Leal. Aren't they kind of all over the place? You had Medina, which kind of changed things, but aren't the BIA decisions on moral turpitude kind of all over the place? There has been transition since 1976. Since 1976, this notion that malice is necessary is gone. Petitioners like to emphasize it because they think that answers the question. It does not. A statute does not have to have malice in order to be a crime involving moral turpitude. That's clear from Knappick and basically every case since 1976. But what if we have a case where if – assume hypothetical that we look at the New York State statute in Knappick and perceive in it something which is extraordinarily close to malice in the traditional sense of malice, and then we look at the Pennsylvania statute and see something which suggests more an element of criminal negligence, and that's what it occurs to be, and the gross deviation is what gets you to criminal negligence as opposed to simple negligence, then why would Knappick necessarily control if that is a genuine distinction between New York and Pennsylvania's definitions? Well, first, Knappick only provides a framework. But I think Your Honor's question reflects the, frankly, attempt by petitioner to confuse what these statutes say. Interestingly, before the board, he conceded both statutes merely require recklessness, and that is true. But the trick is how you define recklessness. That is true. But in both statutes – How do you define recklessness? In both statutes define recklessness the same. This is pure recklessness. Petitioner can stand up and bang the gavel and argue as much as he wants, but the statute says recklessness. Both statutes say recklessness. Now, it actually is interesting. Is all reckless conduct – does all reckless conduct involve moral turpitude? No. So just the fact of recklessness is not going to get you there, right? No. Well, at this point, if the Attorney General changes his interpretation – It helps, but you need something other than recklessness. Okay. And Your Honor's questions illustrate what it is. Petitioner wants to ignore that what are you consciously disregarding? What is your gross deviation from care? What does that go to? What it goes to is that you might – That's recklessness. That's recklessness. That you might kill. I'm sorry? What's the aggravating factor? That you might – that you're putting someone at a risk of death or serious injury. But isn't that inherent recklessness? Let's assume that my guess is – and I hope I'm not unduly slandering anyone here – my guess is everybody in this courtroom has at some point in their lives been late to a meeting, come to an intersection controlled by a light, the light is yellow, and you go through it, but it turns red before you get through. You've just run a red light. Now, that's recklessness. And there's no situation, especially in a metropolitan area, where that reckless conduct could not involve in serious injury or death. But yet it's the kind of thing which, unfortunately, inheres in the practice of driving a car. It's the kind of risk where you assume, well, you go ahead and you do it. And my guess is that you may even in your less – well, you may even have been guilty of running a red light now or then, now and then. Well, Your Honor, if I did, I would be committing a crime involving moral turpitude, possibly. Whoa. Are you serious about this? That would be vile and depraved? Vile, depraved, or – Because you can't get to your boss's meeting? If you put someone at the risk of death, absolutely. That's the whole point. Any act of recklessness, conceivably, the way you want us to look at this statute, could result in – if you put the person in the middle of Sonoma Desert, maybe not. But if you put the person in the middle of Pittsburgh, or I guess this occurred in Darby, which I don't know that well, but it's still a pretty impacted and congested area, that kind of recklessness could result in death. It's the nature of driving something which weighs 3,000 pounds through a crowded city. Yes, Your Honor. The problem is, though, as Petitioner is attempting to argue somehow, is that there is no victim. None of these statutes require you to actually hurt someone. In fact, what NAPIC says is, why the mere fact that you're lucky enough not to kill or seriously injure someone, why would that mean what you do isn't morally culpable? Because your mental state is exactly the same whether someone happens to be in the path of the car or not. The culpability that you want to punish is exactly the same. I get that, and it makes a lot of sense, and it might be your strongest argument. But we still are stuck with the term of moral turpitude. And you're arguing to me that that conduct which everyone in this courtroom may well have engaged in at some point in his or her adult life is impregnated with a stamp of moral turpitude. That's really what you're arguing. Recklessness, the kind of recklessness that we have when you mean to hit the brake, but you hit the accelerator, that kind of recklessness is impregnated with a stamp of moral turpitude. First of all, Your Honor, I think sort of with the facts of this specific case are completely irrelevant. But I'm trying to back into that, because I'm not... and it hasn't been argued here, but it just strikes me that there's got to be a due process issue if you apply a rule in a mechanistic and ritualistic way in a system, in an individual case, and totally lose track of the fact that the circumstances in a given case are different from the circumstances that give rise to the rule. You end up taking a rule that arises in a body of law where you don't know what the conduct is, and the best way of getting to that conduct is to create a body of law which allows courts to deal with how you define moral turpitude. Well, Your Honor, I think the Attorney General had the answer to that, and that was called Sylvia Trevino. And that court, this court overruled Sylvia Trevino saying, no, we will not look at the facts of the case. The Attorney General may not look at the facts of the case. This is categorical, and that's it. But you can consider hypotheticals. Well, John Lewis seems to say no. No, we can. We have said we could. We don't have to look at the facts of the case, but we can consider Chief Judge McKee's hypothetical of coming to a red light, going right through the red light. Now, I know that if I go through a red light, I can very well get involved in a collision that will cause or may cause someone serious injury. If I do that, I could be charged under the statute. If I'm an alien, I would be subject to removal. If you're an alien and you have another conviction of forgery and fraud as the petition does. But the big thing is that that conduct that we're talking about would be moral turpitudinous. I really dislike the word. So do I. Morally offensive, pale, vile, and pretty bad. Goose deviations from the standard. I mean, it's the epitome of an ambiguous statute. No one likes saying morally turpitudinous. Really bad. When I say that to a family member trying to explain a case, they're like, what the heck does that mean? He was depraved. And that's why we defer to the Attorney General's interpretation of these situations. Is that kind of really depraved conduct? I mean, it sounds more like it is negligent. It sounds more like it is a serious traffic offense. But to say it's depraved because I go through a red light? The thing is, you are setting up a factual scenario without any evidence of a culpable state of mind. No, sir. It's hypothetical. And we are instructed to consider hypotheticals that would bring us to the least culpable conduct under this statute under which I could be convicted. But the examples can't ignore the statute. This is not negligence. No, no, no. We are instructed by case law to consider hypotheticals to consider the least culpable conduct under a statute under which would be considered morally turpitudinous conduct and therefore I could possibly be removed from the country. Well, combined with other convictions. Is it morally turpitudinous for me to go through a red light? If you have the culpable state of mind of recklessness. Again, we cannot say this is negligent. You must be reckless. If I go through that light disregarding the possibility, because possibility is in the Pennsylvania statute, disregarding the possibility that I can cause serious injury to somebody coming in the opposite direction or on a cross street, could that not bring me within the terms of this statute? Within terms of the Pennsylvania statute? If you have the culpable state of mind, yes. And then with that, yes. But that is the culpable state of mind. I mean, the hypothetical has within it the culpable state of mind. It is reckless. But that is essentially what NAPIC is. It is recklessness. It is knowing of the danger and disregarding the danger. Well, what Your Honor seems to be concerned about is... The fact that you have such a problem answering that with a yes is exactly the problem, at least I have, upon the categorical approach. You're very uncomfortable answering yes to that hypothetical and there's an obvious reason why you should be uncomfortable. It gets you to a very... It gets us to a very illogical and possibly unjust result. And I think that's exactly why you're having such trouble answering the question yes. Well, Your Honor, this Court is not here to sit whether a result is just. No, I agree with you. Justice has no role in our deliberation. That's what you're arguing. Your Honor, this is not about what is right and wrong in the sense of whether or not petitioners should be... And it has nothing to do with justice. It's whether or not the Attorney General's interpretation of the statute is appropriate. It's a three-y-e-s. It somehow is not part of your vocabulary. I don't... I've said yes, Your Honor, in the sense of if you have the culpable state of mind in running a red light and you consciously disregard a risk that someone could be killed or seriously injured, yes. That is a crime involving moral turpitude. That's nappic. That's not controversial, Your Honor. Well, the issue is, is it the New York statute or is Pennsylvania somehow different? That's what we're trying to wrestle with with these hypotheticals. Well, I think, again, it would behoove the Court to look at Leal. Leal is essentially the same statute as what Pennsylvania has. And what the agency said is when... It's a fairly simple duty you have in society. Don't put people at the risk of death or serious injury. Don't do it. And in the Arizona statute, it was the recklessness and endangerment of a person, which was putting them at a risk. How about... And I've heard many of these things happen. I'm not looking at the reports in this case. But how about a senior citizen who was just about ready to leave a parking lot and instead of stepping on the brake, steps on the gas and goes through a store, a 7-Eleven, and happens to run over somebody inside the store. Now, it was a clear accident. It was a mistake. But that person, using this as a hypothetical, could be charged under the statute. And that person's conduct would be considered morally turpitudinous? No, Your Honor. That person couldn't be charged under the statute because that was negligence. Why not? How is that different from the situation? Well, Your Honor, look, he also claims he didn't commit the forgery and fraud, which he's not contesting. How is that different? We don't collaterally attack convictions before the immigration. How is that scenario different from this situation? Because in the example, it was an accident. Well, the example was that he meant to hit the brake, but he hits the accelerator instead. In that sense, it's an accident. That sounds like negligence, Your Honor. That is vile conduct. It's depraved conduct. It's a deviation from the standard of conduct that a reasonable person should observe in the active situation. Could you just identify for us, because I'm not seeing it, what the distinction is between the two that is allowing you not to say they're the same? Because what Your Honors are describing is negligence. Have you read 2705? It is exactly what it is. That's Mr. Sachs' point. It's negligence, but it's negligence, he's arguing, along with an aggravated circumstance to get away from NAPIC. But if you look at the statute, it is recklessly defined in a way that you could argue it's criminal negligence With all due respect, no, Your Honor, you cannot. Is that criminal negligence? The plain language of the statute is reckless. And how do you define reckless? Consciously disregarding a substantial and unjustifiable risk that something will occur. That's the thing that makes it criminal. Otherwise, you can't get it to a level of criminality. That's just plain negligence. You can't get to the level of criminality with negligence, Your Honor. You have to have a conscious disregard. Otherwise, you can't get to the level of criminality. It is just plain negligence. Unless you have a definition of recklessness, such as 2705 is. That's what takes common law negligence and elevates it to the level of a crime. Again, the fact you're having such difficulty with that concept and Judge Fuentes' hypothetical, it's exactly the problem that's in this case. You have difficulty saying that that senior citizen who means to hit the brake, but hits the accelerator and rams into a window and possibly hurts someone, is guilty of recklessly endangering a person in Pennsylvania under 275. I'm absolutely not saying that, Your Honor. You're saying that they are? The hypothetical is negligence. I don't know how I can convince the court to look at the plain language of the statute. Why is that not a gross deviation? If you hit the accelerator, what's different from his hypothetical in this case? The fact that it's a parking lot and not on the thoroughfare? Your Honor, again, I think there's a good illustration of why we don't allow aliens to collaterally attack. What is the difference? Man, before you leave here, you're going to answer a question and not respond to my question with what you want me to hear. What is the difference between his hypothetical and this case, other than, and arguably this is the distinction, one occurs in a parking spot and the other occurs on the highway? What's the difference? I don't know, Your Honor, because we're not here to look at what he claims occurred. We're here to look at the fact of conviction. John Lewis said we can't look at it. A moment ago you just said that the hypothetical was negligence and this is not. You said that a moment ago. What is the basis for drawing that distinction? You made the distinction. You're the one in response to Judge Fuentes' question or hypothetical that said that was negligence and this case that we're dealing with is not. What is the basis for drawing that distinction? In the example, you said he accidentally hit the gas pedal. That's negligence. You know, we can peek behind the curtain in this case, and when we peek behind the curtain we find out that that's exactly what happened in the case that we're considering. The difficulty is we don't know what he actually was convicted of. He made a mistake. He stepped on the accelerator instead of the brake. I'm sorry to peek behind the curtain. I know we're not supposed to, but I couldn't help it. It's the same case. Except, Your Honor, that is why we don't peek behind the curtain. Okay. That's not what he was convicted of doing because he could not have been convicted of doing that. All right. Okay. We'd ask the Court to deny the petition. All right. Thank you. Thank you. Your Honors, very briefly, Oil has conceded this issue. Appended to my brief, in another reckless endangerment case, they have moved this Court to remand because the Pennsylvania statute in their language is absent to address whether petitioner's conviction. This is not my petitioner. This is Petitioner Vasquez Lopez in another case. It's appended to my brief. It's on a briefing schedule now, which is currently suspended. Address whether petitioner's conviction constitutes a CIMT despite the absence in the Pennsylvania reckless endangerment statute of the aggravating factors identified by this Court in NAPIC. Depraved indifference and grave risk of death. So they're forced to argue that recklessness is its own aggravating factor because, as from a statutory analysis, NAPIC is not this statute. And just to the extent that my colleague may have suggested that going through the stop sign or going into the unoccupied garage is basically what happened in NAPIC, NAPIC facts came out, too. He was driving northbound in the southbound lanes on the Staten Island Expressway while intoxicated. That's what NAPIC did. That's why NAPIC was charged with depraved indifference to the value of human life and actually causing grave risk of death. Now, to your point, Judge McKee, about maybe the government's best argument is that I can't, the petitioner can't take solace in the but for the grace of God nothing bad happened. The question is what's the completed act with reckless endangerment? The completed act on the least culpable conduct with reckless endangerment is not the causation of any risk or any harm. It's the potential causation of risk of harm, whereas in NAPIC, the least culpable conduct categorically is the actual causation of a grave risk of death. Now, that is imminent, that is substantial. That's an imminence requirement and a substantiality requirement that is not found in the Pennsylvania statute. And just to your point, Judge, about a mechanistic. What do you think the triggering point was in NAPIC? Was the intoxication? In other words, what is it that puts somebody in grave risk of danger or serious injury? Well, probably that he's driving northbound in the southbound lanes on a highway. While intoxicated. Even if he was sober. Even if he was sober, I would suggest that if it was a purpose. And you're saying the distinction here is that there is a mere possibility of putting somebody in danger, whereas in NAPIC you had to engage in conduct that actually did that. Precisely. And to the extent my colleague wants to cite the Leal case, which is a case that he cited in the very beginning of his remarks. Leal is an Arizona statute which requires substantial risk of imminent death along with recklessness. So it's no wonder why the Leal board said that when you cause substantial, substantiality, risk of imminent death, and they also say it can't be applied to a hypothetical victim. So substantial risk, imminent death, actual victim, that that implicates accepted rules of society and puts it over the line into reprehensible conduct. Let's not forget all your points about this. Based, violent, depraved, and contrary to the accepted rules of society. But that is the same thing. It's two prongs. It's two prongs. Can you imagine a situation that is not based, violent, depraved, that is consistent with the accepted rules of society? No, sir, that's not my point. My point is that when you sweep up, you have to focus on the first prong of that, based, violent, depraved. And when actions by itself, such as the actions in your hypothetical or the actions in the record before this case, which is just criminally poor risk assessment, that's what reckless endangerment is. It's criminally poor risk assessment. There's nothing intrinsically, inherently based, violent, depraved about that. Imposing the CIMT tag on this risks sweeping up many people who do not commit non-terpitudinous acts. And the consequences are not misdemeanor to the third degree and one-year probation. The consequences for somebody or for hundreds of people at least, and that's why you're seeing a lot of these cases now percolating up to the circuit, is because this used to not even be considered a crime involving moral turpitude. There's a reason why the third circuit is just getting these petitions for review now. Immigration judges, immigration, my colleague represents DHS. Well, the long DHS lawyers used to take the position that REAP was not a CIMT. It's only now, but it sweeps up a broad swath, and this petition should be granted. Thank you.